Williams, J.
The general ground upon which the reversal of the judgments below is sought, and the only one advanced by counsel in the argument, is, that the facts established by the evidence do not entitle the plaintiff to the set-offs allowed him. The evidence is embodied in a bill of exceptions which was properly taken; and there appears to be neither substantial conflict in the evidence, nor material controversy about the facts of the case. The facts are substantially as follows: The plaintiff, Warner, was indebted in the sum of $4,067.82, on a draft drawn by him February 19, 1887, on the defendant Gordon, and accepted by the latter for Warner’s accomodation, payable four months after date, at The American Exchange National Bank, New York. Qn the 18th of June, 1887, being a few days before the *385 maturity of the draft, Warner drew bis check on The Bank of Monroe, of Rochester, New York, where he had funds, for $4,067.82, the precise amount of the draft, and forwarded the same to Gordon, to enable him to meet the draft at its maturity. The check was received by Gordon, in Cincinnati, and on the afternoon of June 20, 1887, was presented by him at the counter of The Fidelity National Bank of that city, which declined to cash it, but carried the amount to the credit of Gordon on his deposit account with the bank, upon the agreement that Gordon should accept New York exchange to the amount of $3,200, and the balance should remain to his credit and not be immediately drawn out.' Thereupon The Fidelity National Bank, on Gordon’s check, issued its draft to him on The First National Bank of New York City, for $3,200, leaving a balance of $867.82 of the Warner check, standing to the credit of Gordon. The Fidelity Bank had no funds in The First National Bank of New York City, and when the draft for $3,200, was presented, payment was, on that account, refused; and the draft has since remained in the hands of Gordon, and the trustee for the benefit of his creditors. At the time the Fidelity Bank received the Warner check, and issued the draft for $3,200, it was insolvent; which fact was known to the managing officers of the bank, and to those who transacted the business with Gordon, but was unknown to him. On the same day, and soon after the business with Gordon was completed, the bank closed its doors, ceased to do business, and passed into the hands of a bank examiner. A few days afterwards Armstrong was appointed receiver. Warner, upon learning of the failure of the bank, stopped the payment of his check which Gordon had deposited with it as before stated, and the check came to Armstrong’s posession upon his appointment as receiver, in which capacity it is now held by him. Gordon, who was in fact the agent of Warner in the transaction referred to with the Fidelity Bank, became insolvent shortly after the failure of that bank, and made an assignment of his property in trust for the benefit of his creditors; and the trustee having custody of the draft for $3,200, was made a party to the action below. One of the objects of the plain *386 tiff’s action was to have the liability of the bank to him on that draft, issued for his benefit, set off against his liability to the bank on the check for $4,067.82, which Gordon deposited with the bank, under the agreement already stated.
The additional facts peculiar to the other set-off claimed are, in substance, these:
On the 21st of February, 1887, Warner accepted a draft drawn on him by Gordon, for the latter’s accommodation, for the sum of $4,249.26, payable to the order of Gordon, four months after date. This acceptance the Fidelity Bank discounted for Gordon, and carried the amount to the credit of his deposit account. On its maturity the acceptance was protested for non-payment, and Gordon’s liability made absolute. The draft passed into the hands of Armstrong, upon his appointment as receiver, and is still held by him. At the time of the failure of the bank, and the appointment of the receiver, there was a balance due Gordon on his deposit account, of $1,190.57, which the plaintiff seeks to have set off against the draft.
The trial court adjudged that the plaintiff was entitled to have the set-offs allowed, but required, as a condition to the entry of the judgment, that he pay the balance remaining due on his obligations in the hands of the receiver, which the record shows, was deposited with the clerk, and judgment was accordingly entered. The plaintiff in error resisted the set-offs, as stated by his counsel in their briefs:
“First — Upon the ground that Warner’s liabilities to the bank not being due at the date of its failure (June 21), the legal or statutory right of offset did not exist; nor did the necessary conditions exist for their allowance as equitable set-offs:
Second — That even if they were allowable as equitable set-offs, yet, being asserted against the assets of a National Bank in the hands of a receiver, they could not be allowed without violating section 5242 of the Revised Statutes of the United States.”
And it is upon these specific grounds that counsel contend the judgments below should be reversed. We will consider them in the order stated; and while the set-offs- *387 allowed do not both stand upon precisely the same footing, they may, for convenience, be considered together.
1. It is undoubtedly true, that under the statute, cross demands are not “deemed compensated, so far as they equal each other,” unless they have existed under such circumstances that if the holder of one of the demands had brought an action upon it against the holder of the other, the latter could have set up his demand by way of set-off or counterclaim; and, as a general rule, to entitle a set-off to be made at law, a. present right of action must exist in favor of the holder of each demand against the other, at the same time; and consequently, the assignment of one of the demands before it becomes due, will in general defeat the set-off. This was held in Fuller v. Steiglitz, 27 Ohio St. 355, where there were no equitable considerations for applying the principle of compensation to cross demands. Rut, “if an insolvent holder of a claim not yet matured assigns the same before maturity, and the debtor at the time of the transfer, holds a similar claim against the assignor, which is then due and payable, his right of set-off against the assignee, when the latter’s cause of action arises, is-preserved and protected.” Pomeroy on Remedies, section 168, This rule, it is said, is based upon considerations of equity, and is adopted to prevent one party from losing his own demand on account of the insolvency of his immediate debtor, and from being at the same time compelled to pay the debt originally owing by himself to the insolvent assignor. It can, of course, have no proper application when the thing transferred is commercial paper, and the assignee becomes the bona fide holder thereof, for value.
The rule was approved and applied in the case of Bank v. Hemingray, 34 Ohio St. 381, where the balance due a co-partnership on its deposit account with a banking house which had become insolvent, was set, off against the individual notes executed by one of the co-partners to the bank, notwithstanding the notes had been transferred before their maturity, to the assignee of the bank for the benefit of its creditors; and, under the rule, the fact that Warner’s liability to the *388 Fidelity Bank bad not matured wben it failed, either on the check drawn by him on the Rochester Bank for $4,067.82, or on his acceptance of the Gordon draft for $4,249.26, did not,.of itself, defeat his right to the set-offs which were awarded him by the judgment below, unless the position of the receiver, with respect to his rights against those indebted to the bank, is a more favorable one than that of an assignee in insolvency; and that it is not, is well settled. The receiver is not a bona fide holder for value, of the assets of the bank, in the sense that its commercial paper in his hands is protected against defences which might have been set up against the bank. He succeeded only to the rights of the bank at the time of its failure; and a set-off available against the bank at that time, is equally available against him. Hade v. Mc Vay, 31 Ohio St. 231, and cases cited on page 238.
The remedy of set-off has been much enlarged in equity, and is there administered in cases, where, under the strict rules at law, it would not be available. Thus, at law, a joint demand cannot be set off against a several one, nor a several demand against a joint one; but equity adopts a different rule where, on account of the insolvency of one of the parties, the other is in danger of losing his claim. Sarchet v. Sarchet, 2 Ohio 320; Baker v. Kinsey. 41 Ohio St., 403. And, generally, equity will enforce the right of set-off, by decreeing the compensation of mutual demands, so far as they equal each other, where they have grown out of the same or connected transactions, or the one has formed, in whole or in part, the consideration of the other, and the party against whom the set-off is asserted is insolvent. These equitable grounds for the allowance of the set-offs claimed by the plaintiff, are present in the case under consideration. The fund against which the check on the Rochester Bank was drawn, was the property of the plaintiff; and the check was put in the hands of Gordon to meet the maturing obligation of the plaintiff. In transferring the check to the Fidelity Bank, and obtaining from it the draft for $3,200.00 on The First National Bank of New York, *389 Gordon was the agent of tbe plaintiff, a:nd the transaction was for the latter’s benefit. The check was deposited upon the agreement that the draft should be issued for the specified sum, and the deposit, and, draft, were each the consideration for the other. It is not to be supposed that the transaction would have occurred, if the pláintiff or his agent had known, at the time, of the bank’s insolvency. No funds were in the hands of the drawee at the time the draft was issued, nor was any provided with which to meet it on presentation ; and, therefore, presentment and protest were not required in order to fix the liability of the drawer. The failure of the .bank to provide the requisite fund to meet the draft, made it necessary, for the plaintiffs protection, to stop the payment of the check; and thps, the liability of the plaintiff to the bank on the check, which the receiver seeks to enforce against him, arose from the bank’s breach of its obligation, incurred as the consideration, in part, of the deposit of the check. There is nothing lacking here, that is essential to a complete equitable right of set-off. And the same is true as 'to the other set-off allowed. The draft drawn by Gordon on Warner for $4,249.26, was accepted by the latter solely for the accommodation and benefit of the former. They are each liable thereon, it is true; but their relation to each other is that of principal and surety. If an action were brought by the bank against Gordon, as the drawer of the draft, he would be entitled to set-off against his liability, the balance standing to his credit on his deposit account with the bank; and he being insolvent, his surety has the right to have the set-off allowed against his liability, which is but a mode of compelling the application of the principal’s property to the payment of his own debt, for the relief of his surety. The objection made to this set-off, on the ground that the liability on the draft had not matured when the bank failed, has already beeü disposed of; for, in that respect, it does not differ from the one previously considered.
2. Does section 5242, of the Revised Statutes of the United States, forbid the allowance of the set-offs? That section reads as follows:
*390 “ Sec. 5242. All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any National banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its' use, or for the use of any ot its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution, shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any state, county, or municipal court.”
The right of set-off existed, as has been shown, and the receiver took the claims which the bank held against Warner, subject to that right, unless the section operates to defeat it. The claim of the plaintiff' in error is, that, as the liabilities of Warner passed to the receiver before they matured, to allow the set-offs, would interfere with the equal distribution of the bank’s assets amongst its creditors, which it was the design of th.e section to secure. Under other provisions of the United States statutes, the comptroller of the currency may appoint a receiver of a National bank, when he is satisfied it is insolvent, or is in default in the payment of its fcirculating notes; and it is the duty of the receiver to take possession of the assets of the bank, and collect or otherwise convert them into money, and pay the same into the United States treasury, subject to the order of the comptroller, who, after redeeming the outstanding notes of the bank, is required to make a ratable dividend of the balance among its creditors. The purpose of section 5242, no doubt, was to prevent a National bank, when insolvent or in contemplation of insolvency, from so disposing of its assets as to prevent their proper application to the redemption of its notes in circulation, and the ratable distribution of the remainder among its creditors; and its provisions extend no *391 farther than to declare void, any disposition by the bank, of its choses in action, securities, or other assets, made with the view of preventing their application to the payment of its circulating notes, or with a view to prefer one creditor to another; and to prohibit attachments, injunctions or executions, against such bank or its property, before final judgment. The section, as we understand it, does not prohibit the allowance of any valid set-off, legal or equitable, which a debtor of a bank may have against any obligation owing to it by him, at the time of its insolvency, The allowance of such a set-off is not the creation of a preference, but an ascertainment of the just amount due. To exact the payment of more than that, would be unjust, and the section, we think, does not require that to be done. Warner’s equitable rightof set-off existing, as it did, at the time of the failure of the Fidelity Bank, and his obligations having passed to the receiver subject to that right, only the balance due on those obligations, after deducting the set-offs, constituted assets of the bank in the receiver’s hands for disposition in accordance with the provisions of the Federal statutes.
Counsel for plaintiff in error cite the case of Armstrong v. Scott, 36 Fed. Rep. 63, as maintaining a contrary doctrine. But the later cases, of Snyders. Armstrong, 37 Fed. Rep. 18, and Yardley, Receiver v. Clothier, 49 Fed. Rep. 337, after a full review and discussion of many authorities, and a careful consideration of the statutes, decline to follow Armstrong v. Scott. Those decisions are in accord with the views we have expressed, and render it unnecessary to enlarge the discussion here.
We find no error in the record, and the

Judgment is affirmed.